RUSSELL L. WINNER, ABA 7811149
WINNER & ASSOCIATES, P.C.
900 W. 5th Avenue, Suite 700
Anchorage, AK 99501
Telephone:  (907) 277-9522
Facsimile:  (907) 277-4510
Email: rwinner@winnerlaw.com

Attorneys for Plaintiff Raymond Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522
Law Offices of

| | |
|---|---|
| RAYMOND C. GIVENS, | |
| Plaintiff, | |
| v. | |
| WALLACE OENGA, | |
| Defendant. | Case No. 3:19-cv-00043-HRH |

**PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT**

Law Offices of

**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

# Table of Contents

Page

I.    INTRODUCTION     3

II.   BACKGROUND     4

    A.  The Contingency Fee Contract And
The Underlying Litigation     5
    B.  The Confidential Term Sheet     7
    C.  The Virden Letter And Amendments
To The Contingency Fee Contract     8
    D.  The Settlement Agreement     10
    E.  Defendant's Nonpayment     11
    F.  This Action     11

III.  ARGUMENT     12

    A.  The Court Has Jurisdiction Over OST To Enforce Its
Judgment Of Specific Performance Against Defendant     12
    B.  The Signing Of The OST Forms By The Clerk Of Court
Had The Same Effect As If Done By Defendant     13
    C.  The Contingency Fee Contract, As Amended, Need Not
Be Approved By The BIA To Be Enforceable Here     15
          1.  General Equitable Principles     15
          2.  *Arenas v. Preston*     18
    D.  In Any Event, The United States Did Approve
The Contingency Fee Contract, As Amended     22
    E.  Defendant's Current Legal Incapacity Is Irrelevant     24

IV.  CONCLUSION     25

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH     Page 2 of 26

Case 3:19-cv-00043-HRH   Document 65   Filed 02/18/20   Page 2 of 26

# I.  INTRODUCTION

On January 16, 2020, the Court held a hearing on its order to show cause why the Office of Special Trustee for American Indians ("OST"), of the U.S. Department of the Interior, should not be held in contempt for failing to comply with the Court's order,[1] entered under Rule 70(a), Federal Rules of Civil Procedure, that OST make payment to Plaintiff Raymond C. Givens on the judgment entered by the Court from the Individual Indian Money ("IIM") account of Defendant Wallace Oenga.[2]

On January 10, 2020, the United States filed a Notice Of Statement Regarding Plaintiff's Motion To Enforce The Court's Judgment and Rule 70(a) Order and the Court's Order To Show Cause ("Notice of Statement").[3] There, the United States argued that the Court lacked jurisdiction over OST, that the United States had not waived its sovereign immunity here, and that the Court lacked the authority to direct OST to make payment to Plaintiff.

On January 13, 2020, Plaintiff filed a response to the United States' Notice of Statement.[4]

At the January 16th hearing, the United States announced that the Bureau of Indian Affairs ("BIA") had determined that Defendant was legally incapacitated, and that a

---

[1]     Docket No. 59.

[2]     Docket No. 29.

[3]     Docket No. 61.

[4]     Docket No. 62.

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH                    Page 3 of 26

Law Offices of

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

guardian or curator has been, or will be, appointed for him. In light of the above, the Court ordered the parties to file additional briefing on the issues raised.[5]

Plaintiff makes the following arguments here: First, the Court has jurisdiction over OST to enforce the Court's judgment of specific performance against Defendant. Second, the signing of the OST forms by the Clerk of Court had the same effect as if done by Defendant and should be treated as such by OST. Third, the Contingency Fee Contract, as amended, between Plaintiff and the Oengas need not be approved by the BIA to be enforceable here. Fourth, in any event, the United States did approve the Contingency Fee Contract, as amended. Finally, Defendant's current legal incapacity is irrelevant to the issues before the Court. These arguments are discussed more fully below.

## II.    BACKGROUND[6]

The Court is familiar with the underlying facts in this action, and Plaintiff need not repeat them here. However, some facts will be highlighted in this supplemental response, and some additional facts and background will be provided, in light of the arguments made and facts presented by the United States.

---

[5]    Docket No. 64.

[6]    The exhibit numbers herein refer to the exhibits accompanying the Declaration of Raymond C. Givens, dated May 1, 2019 ("Givens' Decl."). Docket Nos. 25 (public filing) and 27 (filed under seal).

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH                    Page 4 of 26

Law Offices of

**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

## A.    The Contingency Fee Contract And The Underlying Litigation

The origin of this matter was the BIA's breach of its fiduciary duty to the heirs of Andrew Oenga ("the Oengas"), which includes Defendant. Simply put, the BIA failed to obtain fair rent from BP Exploration (Alaska), Inc. ("BP") for its use of the restricted Native allotment of the Oengas. That allotment is strategically located at Prudhoe Bay, and it is used extensively for oil production there.

The Oengas raised their concerns about low rent with the BIA, but they were rebuffed by that agency. They then approached numerous private attorneys to represent their interests against the BIA. The Oengas could not afford to pay an attorney by the hour, and none of the attorneys approached would agree to take the case on a contingency fee, out of concern that the litigation would be too expensive, too time-consuming, and too risky.

Then the Oengas asked Plaintiff, who had had success in major litigation against the United States on behalf of Indians and tribes in Idaho, if he would take the case. Plaintiff agreed to do so on a contingency fee basis. Plaintiff and the Oengas signed a Contingency Fee Contract, dated October 31, 2003, under which the Oengas agreed to pay Plaintiff 35% of any increase in back and future rents that he could obtain from his efforts.[7] Neither the Oengas nor Plaintiff asked the BIA to approve this fee agreement. They knew that such approval would be unlikely because they were suing that agency. They expected that the BIA would likely reject

_____

[7]    Ex. 1.

Law Offices of

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

Law Offices of

**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

the fee agreement or insist on changes that would make it unfeasible for Plaintiff to expend the time, incur the expense, and take the risk of handling the litigation.

Plaintiff eventually dropped all his other cases, expended thousands of hours of his time, and depleted his personal savings to fund the costs of the litigation. He filed an action against the BIA in the U.S. Court of Federal Claims for breach of the BIA's fiduciary duties and for money damages against it. BP and the other major oil companies operating at Prudhoe Bay (ExxonMobil, CononcoPhillips, and Chevron) intervened as additional defendants in the action. The BIA was represented by attorneys from the U.S. Justice Department, and the oil companies were represented by their own attorneys. It truly was a case of David against Goliath. The BIA vigorously defended itself, with the assistance of the oil companies, arguing that it had not breached its fiduciary duties and that the rental payments to the Oengas were fair and reasonable and should not be increased.

The Court of Federal Claims disagreed. Plaintiff prevailed before that court in proving that the BIA had breached its fiduciary duties to the Oengas when it agreed to rental payments for the allotment that were too low. On February 8, 2011, the Court of Federal Claims entered judgment for the Oengas and against the United States in the amount of $4,924,000.[8] All parties then appealed the court's decision.

However, during the appeals, Plaintiff, the Justice Department attorneys, and the oil companies' attorneys began protracted and often contentious negotiations in an attempt to

---

[8]      Ex. 2.

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH        Page 6 of 26

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522
Law Offices of

settle this and all the other related, pending administrative and court litigation between the parties regarding the payment of past and future rent for the Oengas' allotment. Throughout these negotiations, the United States and its attorneys continued to take an adversarial position with Plaintiff and the Oengas, stating that the BIA had not breached its fiduciary duties to them, that the rent they had been receiving for the allotment was fair, and that they were not entitled to increased rent payments.

### B.   The Confidential Term Sheet

After several months of negotiations, the parties reached a mediated agreement on the terms of a global settlement. On June 23, 2011, Plaintiff, on behalf of the Oengas; Jason Hill, a Justice Department attorney on behalf of the United States; and Jim Torgerson, on behalf of the oil companies, signed a Confidential Term Sheet, setting out the terms of a global settlement agreed to by all parties.[9] Under it, the parties agreed that the Oengas would receive both a large lump sum payment and a dramatic increase in future rental payments for the allotment. The Confidential Term Sheet also stated, in pertinent part: "Some of lump sum and future rents will be paid to Givens Law firm and some to BIA for the Plaintiffs' benefit, as agreed to by Plaintiffs and Givens Law firm." [10]   Thus, the United States agreed that Plaintiff would be paid contingent attorney's fees from future rents paid for the allotment.

---

[9]   Ex. 3.

[10]   *Id.* at 2.

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH                    Page 7 of 26

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522
Law Offices of

### C. The Virden Letter And Amendments To The Contingency Fee Contract

On August 5, 2011, Plaintiff and the Oengas signed a Contingency Fee Contract First Amendment.[11] There, they agreed to simplify the method of calculating the Oengas' payments to Plaintiff for his contingent fee from future rents. Instead of Plaintiff being paid 35% of the rental increases, he would be paid 25% of all future rents paid. This change had the effect of slightly reducing Plaintiff's fees. The amendment also stated: "Clients shall direct that these payments for professional services shall be paid directly to Attorney by Lessee BP Exploration (Alaska), Inc. and/or the United States or any subdivision thereof from the funds due Clients at the same time the remaining funds due are paid to Clients."[12] Like the original Contingency Fee Contract, the amendment was signed by all the Oengas, including by Defendant. Even after deducting Plaintiff's fees, each of the Oengas began receiving a much greater yearly rental payment than they had been receiving earlier.

On December 9, 2011, Eugene R. Virden, Regional Director, BIA Alaska Region, wrote a letter to Plaintiff regarding a distribution plan from the IIM account for one of the Oengas, who was then a minor.[13] In that letter, Virden stated that he, along with attorneys at

---

[11]     Ex. 4.

[12]     *Id*. at 2.

[13]     *See* Exhibit 17, attached to the accompanying Declaration of Raymond C. Givens, dated today's date. For the convenience of the Court and counsel, Plaintiff has given this letter an exhibit number following after the 16 numbered exhibits attached to Declaration of Raymond C. Givens, dated May 1, 2019. (Docket Nos. 25 and 27) Plaintiff has redacted the names of the Oenga heir, who was the subject of the letter, and that person's guardian, because that person was then a minor, and because that person is not a party to this action.

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH     Page 8 of 26

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

Law Offices of

the Department of Justice and the Regional Solicitor's Office of the U.S. Department of the Interior, had reviewed both the Contingency Fee Contract and the Contingency Fee Contract First Amendment between Plaintiff and the Oengas.[14] While asking a number of questions about the treatment of costs and fees there, Virden's principal concern was that reimbursement to Plaintiff for the costs that he advanced in the litigation should be taken "off the top" of the initial lump sum settlement, rather than out of the Oengas' share of the settlement after Plaintiff's contingent fee was deducted. Virden's approach would have the effect of further reducing Plaintiff's fees.

Plaintiff agreed to accept Virden's approach, and on May 24, 2012, Plaintiff and the Oengas signed the Fee/Cost Reduction Agreement to accomplish this.[15] The Fee/Cost Reduction Agreement also stated: "[T]his fee distribution agreement does *not* affect the 25% contingent fee due Attorney from Clients on *future rents* due on Native Allotment F-14632 through 2038 under the Contingency Fee Contract as amended, with it being appropriate to reaffirm that the 25% contingency fee is due on future rents through 2038 as provided for in the Contingency Fee Contract, as amended."[16]

Virden's other questions about payment to Plaintiff for his fees and costs were answered to his satisfaction, and the BIA agreed to a distribution plan for payments to Plaintiff

---

[14]     *Id*. at 1.

[15]     Ex. 5.

[16]     *Id*. at 2 (emphasis in original). The revised lease between the BIA, on behalf of the Oengas, and BP ended up running through 2036 rather than 2038.

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH          Page 9 of 26

from the minor Oenga's IIM account under the Contingency Fee Contract, as amended, between Plaintiff and the Oengas.[17] It is noteworthy that Virden's letter stated that the BIA was not aware of any regulation or law requiring that Plaintiff's contingency fee agreement with the Oengas be approved by the BIA.[18] However, that is effectively what happened here.

### D. The Settlement Agreement

On May 30, 2012, the parties to the underlying litigation signed a Settlement Agreement and Release of All Claims ("Settlement Agreement").[19] Again, Jason Hill, with the U.S. Department of Justice, signed the agreement on behalf of the United States. The Settlement Agreement expressly recognized Plaintiff's right under the Contingency Fee Contract, as amended, with the Oengas to receive payment for his fees from future rents paid on the allotment. Although the Settlement Agreement stated that none of the parties had assigned any right of recovery or damages related to the claims released in that agreement, the agreement expressly provided: "The representations of this Paragraph do not apply to any contingent fee agreement entered into between any party and their respective attorney(s) for representation in the Litigation or negotiation of the Lease, Amended Lease, any Replacement Lease, and this Settlement Agreement, or any other representation related to Parcel B."[20]

---

[17]   Givens' Decl. ¶¶ 17, 21 (Docket Nos. 25, 27)

[18]   Ex. 17, at 5.

[19]   Ex. 7.

[20]   *Id.* at 22-23.

Law Offices of

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522
Law Offices of

### E.     Defendant's Nonpayment

At first, Defendant honored his contractual obligation to Plaintiff and authorized OST to pay Plaintiff. However, starting in 2017, Defendant, unlike the other Oengas, stopped authorizing OST to pay Plaintiff.[21] On February 26, 2018, Plaintiff and Defendant entered into a Settlement Agreement ("2018 Settlement Agreement"), under which Plaintiff agreed to refrain from bringing legal action against Defendant in exchange for Defendant agreeing to a payment plan.[22] In the 2018 Settlement Agreement, Defendant affirmed his promise in the earlier Contingency Fee Contract, as amended, to direct OST to pay Plaintiff from future rents.[23]

### F.     This Action

However, Defendant again failed to honor his promise to direct OST to pay Plaintiff, and Plaintiff was forced to bring the instant action against Defendant. Defendant did not enter an appearance or respond to Plaintiff's complaint, and on June 10, 2019, the Court entered default judgment against Defendant.[24] That judgment included an order of specific performance that Defendant direct OST to make payments to Plaintiff.[25] When Defendant

---

[21]     Givens' Decl. ¶ 21.

[22]     Ex. 14.

[23]     *Id.* ¶ 6.

[24]     Docket No. 29.

[25]     *Id.* at 4-5.

failed to comply with that order, the Court authorized the Clerk of Court, standing in Defendant's shoes, to so direct OST, under Rule 70(a), Federal Rules of Civil Procedure.[26]

OST did not comply with the Court's order, giving no reason for its refusal. The Court then ordered a hearing to show cause why OST should not be held in contempt for failing to comply with the Court's order.[27] Only after such order was entered did the United States appear on behalf of OST before the Court and present its arguments for noncompliance.

## III. ARGUMENT

The United States' Notice of Statement made a number of jurisdictional arguments, which Plaintiff will address first. Then Plaintiff will address the substantive arguments made by the United States. For the reasons discussed below, none of those arguments have merit.

### A. The Court Has Jurisdiction Over OST To Enforce Its Judgment Of Specific Performance Against Defendant

The Court has jurisdiction over Defendant in this matter because the Plaintiff sought a judgment for declaratory relief, specific performance and damages in an amount in excess of $75,000. 28 U.S.C. §§ 1332, 2201, and 2202. Venue is proper before this Court. 28 U.S.C. § 1391. This Court has the power under Rule 71(a), Federal Rules of Civil Procedure, and the inherent judicial authority to enforce its judgment of specific performance against Defendant in this action.

---

[26]   Docket No. 39.

[27]   Docket No. 76.

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH                    Page 12 of 26

LAW OFFICES OF
WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

The United States argues that notwithstanding the above, the Court lacks jurisdiction and authority over OST to enforce the Court's judgment because OST is not a party, and because the United States has not waived sovereign immunity here.[28] Those arguments are without merit. Plaintiff addressed them in its earlier-filed response to the United States' Notice of Statement,[29] and Plaintiff's response there is incorporated by reference herein and need not be repeated here.

For the reasons stated in Plaintiff's earlier response, this Court has jurisdiction over third persons, including OST, both under Rules 69(a)(1) and 70(a), Federal Rules of Civil Procedure, and under the Court's inherent authority to enforce its judgments. Additionally, the sovereign immunity of OST and the United States has been waived here by section 702 of the Administrative Procedure Act, 5 U.S.C. § 702.

**B.      The Signing Of The OST Forms By The Clerk Of Court Had The Same Effect As If Done By Defendant**

The United States argues that OST has not made payment to Plaintiff because the Clerk of Court, acting pursuant to this Court's order under Rule 70(a), Federal Rules of Civil Procedure, is not an "authorized representative" of Defendant under various regulations and operating procedures of the U.S. Department of the Interior.[30] However, there is nothing in

---

[28]      Docket No. 61, at 9-10.

[29]      Docket No. 62, at 6-10.

[30]      Notice of Statement, at 2. There, the United States cites the following: (1) 25 CFR § 115.101, which provides that adult Indians or an "authorized representative" has the right to withdraw funds from their IIM account; (2) 25 CFR § 115.102, which provides that if

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH                    Page 13 of 26

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522
Law Offices of

the federal statutes under which these regulations and procedures were promulgated that elevates them above the authority of this Court to enforce its judgment. Instead, the Court is authorized under the Federal Rules of Civil Procedure, adopted by order of the U.S. Supreme Court, to enforce its orders and judgments.

That is precisely the purpose of Rule 70(a), which provides as follows:

> **Party's Failure to Act; Ordering Another to Act.** If a judgment requires a party to convey land, to deliver a deed or other documents, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done – at the disobedient party's expense – by another person appointed by the court. *When done, the act has the same effect as if done by the party.*

(Emphasis added.) Under that rule, the OST forms signed by the Clerk of Court are to be treated as having *the same effect as if done by Defendant*.

The United States acknowledges that OST is obligated to make payment from an IIM account as directed by the account holder.[31] That is what has occurred here. Because the Court has jurisdiction over OST for purposes of enforcing its judgment, the effect of the OST forms signed by the Clerk of Court under Rule 70(a) is binding on OST, notwithstanding its

---

an adult Indian is *non compos mentis* or under a legal disability, funds from his or her IIM account may be disbursed to a legal guardian or curator under such conditions as the Secretary of the Department of the Interior may prescribe; (3) 25 CFR § 115.601, which describes the circumstances under which the BIA may restrict an Indian's IIM account through supervision or as an encumbrance; and (4) OST Desk Operating Procedures and the Interagency Procedures Handbook, which state that the only way an Indian IIM account holder can chose to have an authorized representative give disbursement instructions is by a Solicitor-approved power of attorney.

[31] Notice of Statement, at 2.

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH            Page 14 of 26

Law Offices of

**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

agency regulations and operating procedures that would bind it absent an order of this Court. Even if the Clerk of Court is not an "authorized representative" of Defendant under agency regulations and operating procedures, the Clerk of Court *is* an authorized representative of Defendant under Rule 70(a), Federal Rules of Civil Procedure. To conclude otherwise would be to grant to an Article II agency the power to severely limit the authority of this Article III Court to enforce its judgments.

### C. The Contingency Fee Contract, As Amended, Need Not Be Approved By The BIA To Be Enforceable Here

The United States argues that OST is not required to comply with the OST forms signed by the Clerk of Court because the Contingency Fee Contract, as amended, between Plaintiff and the Oengas, was not approved by the BIA, under 25 U.S.C. § 410.[32] That argument is without merit for the following reasons.

#### 1. General Equitable Principles

At the outset, it is useful to consider the general equitable powers of the Court when considering claims of breach of the fiduciary duties of a trustee. In particular, the Court

---

[32]    Notice of Statement, at 3-7.

    25 U.S.C. § 410 provides:

    **Moneys from lease or sale of trust lands not liable for certain debts**
    No money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period, or, in case of a minor, during his minority, except with the approval and consent of the Secretary of the Interior.

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH                    Page 15 of 26

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522
Law Offices of

Law Offices of

**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

has broad equitable powers and discretion to consider the timing and manner of payment of attorney's fees in the context of such litigation.[33] When a beneficiary claims that the trustee breached his or her fiduciary duty, the trustee should have no right to control payment of the beneficiary's attorney's fees in the resulting litigation. That would give the trustee the ability to shield himself or herself from liability for breach by depriving the beneficiary of legal counsel needed to establish and recover on the breach. The question can be analyzed in terms of the following: (1) the type of fee contract (hourly or contingent); and (2) the time of payment (during the litigation, at resolution of the litigation, or at the time of future payments from funds resulting from the litigation).

First, consider the hourly-fee situation: Assume the trust corpus was sufficient to pay an hourly attorney's fee in the breach-of-trust action, and that such an hourly fee paid from the trust corpus was the only way the beneficiary could obtain legal services. Could the trustee, under the guise of exercising his or her fiduciary responsibility, refuse to authorize payment of the contractually based hourly attorney's fees? The answer must be No. Otherwise, the trustee could shield himself or herself from liability for breach by effectively denying the beneficiary access to an attorney.

---

[33]     *Bogert's the Law of Trusts and Trustees* § 809 – Discretionary Allocation by Court – Expenses of Litigation (2019) ("[T]he amount of such expenses which will be approved, and whether they are to be charged to the principal or income account of the trust, rests in the discretion of the appropriate court. . . . [I]f the object was to protect and preserve the trust, costs and fees incurred in its prosecution may equitably be charged to the principal account of the trust.").

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH                          Page 16 of 26

Law Offices of

**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

The same result should obtain regarding a contingency fee contract: Requiring prior approval of that contract by the trustee, or requiring fee approval by the trustee at time of resolution of the litigation, which necessarily would include the right to not give such approval, would again allow the trustee to shield himself or herself from liability for breach by effectively denying the beneficiary access to an attorney. What attorney would agree to take a case if the other side had the right to deny him any fee after having prevailed?

Finally, the timing of the fee payment should be irrelevant to the trustee's lack of right to prevent the payment from the trust corpus of the beneficiary's attorney's fees necessary to prosecute the litigation. Allowing the trustee to deny payment of attorney's fees from trust funds, even future funds, generated by the breach of trust action again would allow the trustee to shield himself or herself from liability for breach by effectively denying the beneficiary access to an attorney.

Applying the above principles here, the Court, in the exercise of its equitable powers, should not allow OST to refuse payment to Plaintiff out of Defendant's IIM account because the BIA has not approved Plaintiff's Contingency Fee Contract, as amended, with the Oengas. To give the BIA that power would have the effect of depriving future allottees the ability to hire attorneys on a contingency fee basis to challenge the BIA's performance of its fiduciary duties to those allottees.

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH

## 2. *Arenas v. Preston*

The above principles were applied by the Ninth Circuit Court of Appeals in *Arenas v. Preston, et al., United States, et al.*[34] There, an Indian sued the United States to determine his right to an allotment of certain land denied him by the United States. To bring suit, the Indian had entered into a contingency fee contract with an attorney, entitling him to a lien on the allotment for his fee if he prevailed in the litigation. After substantially succeeding in the suit, the attorney asserted a lien for his fees on the newly granted allotment. The United States resisted the lien, arguing that a federal statute deprived the Indian of the right to alienate or encumber the land.[35]

Applying equitable principles, the Ninth Circuit rejected the argument of the United States. The court held that when Congress waived sovereign immunity by allowing an Indian to sue the United States to determine the right to an allotment,[36] the United States impliedly consented to the payment of reasonable attorney's fees generated by the allotment itself. Quoting from *United States v. Equitable Trust Co.*,[37] the Ninth Circuit in *Arenas* wrote:

> When all is considered, we are brought to the conclusion that the
> United States by its intervention and participation in the suit,
> consented, impliedly at least, that reasonable allowances be made

---

[34]    181 F.2d 62 (1950).

[35]    *Id*. at 64 n.5, quoting Section 5 of the General Allotment Act of 1887, 24 Stat. 388, 389, 25 U.S.C. § 348; and n.6, quoting *United States v. Rickert*, 188 U.S. 432, 436 (1903).

[36]    Act of 1894, 28 Stat. 286, 305, as amended, 25 U.S.C. § 345.

[37]    238 U.S. 738, 744 (1931).

Law Offices of
**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

from the fund, under the rule before stated, for the services and expenses of the next friend and his attorneys.[38]

The Ninth Circuit in *Arenas* added:

> The [government's] argument carried it to the cruelly farcical posture that the government must protect the Indian by strictly preventing any diminution of the allotted land even though by exercising such protection the Indian without funds cannot have any part of his rightful allotment of land.
>
> . . . .
>
> When the United States authorized the Indian to make the United States an adversary party in its own courts, it did so knowing that the Indian by himself was incapable of taking advantage of the privilege and that attorney fees and other expenses would be the unavoidable concomitant. It also knew that the Indian litigant, with few exceptions, was without the means to meet the necessary expenses. It would seem to us that Congress could not have intended to commit the subject to its courts with any paralyzing limitation but, in committing the subject to its court it intended them to fully exercise their general equitable jurisdiction. The chancellor will, of course, see to it that no unconscionable fee or extravagant expenditure will be allowed and will protect the allotment from being affected in the slightest unnecessary manner or degree.[39]
>
> The logic and holding of *Arenas* apply in equal measure to the instant case.

Here, as in *Arenas*, Congress authorized suit against the United States. In *Arenas*, the suit was for the United States' breach of its duty to convey an allotment, under the Act of 1894, 25 U.S.C. § 345. Here, it was for the United States' breach of its duty to obtain fair rent for an

---

38   181 F.2d at 66.

39   *Id*. at 66-67.

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH          Page 19 of 26

Law Offices of
WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

allotment, under the Indian Mineral Leasing Act, 25 U.S.C. § 396(a)-(g), and the Indian Long-Term Leasing Act, 25 U.S.C. § 415(a).

Further, here, as in *Arenas*, a federal statute prevented an Indian allottee from conveying or entering into a contract concerning the allotment. In *Arenas*, the statute provided: "And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same . . . such conveyance or contract shall be absolutely null and void." 25 U.S.C. § 348. Notwithstanding this, the court in *Arenas* had no difficulty in concluding that the statute authorizing suit impliedly also authorized payment from the allotment for the Indian's attorney's fees, thus effectively overriding 25 U.S.C. § 348. Here, the statute relied on by the United States provides: "No money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period, or, in case of a minor, during his minority, except with the approval and consent of the Secretary of the Interior." 25 U.S.C. § 410. As can be seen, the prohibition of the statute in *Arenas* was actually more strict than the statute in this case, which allows lease proceeds to pay an Indian's debt with approval of the Secretary.

Accordingly, here, as in *Arenas*, the Congressional authorization of suit by the allottee against the BIA necessarily implied authorization of a reasonable attorney's fee contract to bring that suit. Approval by the BIA of the Contingency Fee Contract, as amended, between Plaintiff and the Oengas is not necessary for OST and the BIA to be obligated by that agreement. To interpret 25 U.S.C. § 410 as requiring such approval would eviscerate the waiver

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522
Law Offices of

of sovereign immunity for suit against the BIA for breach of its fiduciary duty to obtain fair rent for an allotment. No attorney would agree to take a case where the BIA has the right to approve or disapprove payment of his fees.

The Alaska Supreme Court's decision in *Law Office of Vincent Vitale v. Tabbytite*[40] does not require a different result. There, attorney Vitale prevailed on behalf of Tabbytite, an Alaska Native, in a municipal condemnation case involving her allotment. Although the Alaska Supreme Court ruled that 25 U.S.C. § 410 prevented Vitale from being paid from the proceeds of that condemnation action,[41] that case did not involve a suit by an Alaska Native *against* the United States. Where, as here, suit *is* brought against the United States for breach of its fiduciary duties, *Arenas* and the equitable principles discussed above require the conclusion that approval by the BIA of an the Contingency Fee Contract, as amended, between Plaintiff and the Oengas is not required for the fees to be paid to Plaintiff from the rental proceeds of the allotment.

Likewise, *Vincent Vitale v. Juneau Area Director, Bureau of Indian Affairs*,[42] a decision of the Interior Board of Indian Appeals ("IBIA") cited by the United States,[43] does not support its position. There, IBIA held that it could not apply the equitable principles of *Arenas*

---

[40]    942 P.2d 1141 (1997).

[41]    Justice Rabinowitz, with whom Justice Compton joined, dissented from this ruling.

[42]    36 IBIA 177 (2001).

[43]    Notice of Statement, at 6-7 n.4.

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH          Page 21 of 26

because it was not a court of general jurisdiction with such equitable powers.[44] Obviously, here the Court has such equitable powers.

As in *Arenas*, when Congress waived sovereign immunity and authorized suit against the BIA for failing to obtain fair rent from an allotment, Congress impliedly approved a reasonable attorney's fee contract to allow that suit to proceed. Without recognition of that implied approval, the grant of the right to sue would be hollow and "cruelly farcical," in the words of the court in *Arenas*. The purpose of 25 U.S.C. § 410, relied on by the United States, is to protect Indians from predatory third parties, not to protect the BIA from suit by Indians for its fiduciary breach.

**D.    In Any Event, The United States Did Approve The Contingency Fee Contract, As Amended**

For the reasons stated above, BIA approval of the Contingency Fee Contract, as amended, between Plaintiff and the Oengas is not necessary for that contract to be binding on OST. But even if such approval were necessary, on three separate occasions the United Stated acknowledged and approved, albeit grudgingly, the Contingency Fee Contract, as amended, between Plaintiff and the Oengas.

First, on June 23, 2011, the attorney of the U.S. Justice Department, acting on behalf of the United States, signed the Confidential Term Sheet, which summarized the terms of a global settlement. There, the United States acknowledged the Contingency Fee Contract between Plaintiff and the Oengas, and the United States stated that it understood and agreed

---

[44]      36 IBIA at 183.

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522
Law Offices of

that under it Plaintiff would be receiving, as payment for his fees, a portion of the future rents from the allotment.[45] Although the Contingency Fee Contract was subsequently amended twice, in each case Plaintiff agreed to a reduction of his fees.

Second, on August 5, 2011, Eugene Virden, the BIA's Regional Director for Alaska, sent a letter to Plaintiff stating that he and the attorneys for the United States had reviewed both the original Contingency Fee Contract and the Contingency Fee Contract First Amendment between Plaintiff and the Oengas.[46] The letter was written as the BIA was developing a distribution plan for one of the Oengas, who was then a minor. Virden asked for a change in the method of calculating the reimbursement to Plaintiff of the costs he had advanced in the underlying litigation, thereby reducing Plaintiff's attorney's fees. Plaintiff agreed to do so, signing with the Oengas the Fee/Cost Reduction Agreement. The BIA then approved a distribution agreement for minor Oenga, authorizing payment to Plaintiff.

It is noteworthy that Virden's letter stated that the BIA was not aware of any regulation or law requiring that Plaintiff's contingency fee agreement with the Oengas be approved by the BIA.[47] However, that is precisely what happened here. Although the purpose of Virden's letter was to review the Contingency Fee Contract and the Contingency Fee Contract First Amendment between Plaintiff and the Oengas, in order to develop a distribution

---

[45]     Ex. 3, at 2.

[46]     Ex. 16.

[47]     Ex. 17, at 5.

plan regarding the Oenga minor, where the BIA's fiduciary obligations were the highest,[48] that review and approval necessarily applied as well to all the Oengas, including to Defendant. The BIA cannot be heard now to argue that this review and approval applied only to the Oenga minor, but not to Defendant.

Third, on May 30, 2012, the Justice Department attorney, again acting on behalf of the United States, signed the Settlement Agreement, resolving the underlying litigation and all claims regarding rental payments for the allotment.[49] There, the United States acknowledged and approved the Contingency Fee Contract, as amended, between Plaintiff and the Oengas.

### E. Defendant's Current Legal Incapacity Is Irrelevant

At the hearing on the order to show cause, the United States announced that the BIA had determined that Defendant is now *non compos mentis*, and that a conservator or guardian has been, or will be, appointed for him, under 25 CFR § 115.102.[50] However, Defendant's current legal capacity is irrelevant to the question now before the Court. The

---

[48]    *See* 25 CFR Part 115, Subpart C – IIM Accounts: Minors.

[49]    Ex. 7.

[50]    That regulation provides as follows:

**Adults under legal disability.**
The funds of an adult who is no compos mentis or under other legal disability may be disbursed for his benefit for such purposes deemed to be for his best interest and welfare, or the funds may be disbursed to a legal guardian or curator under such conditions as the Secretary or his authorized representative may prescribe.

United States does not allege, and there is no evidence showing, that Defendant was *non compos mentis* when he signed the original Contingency Fee Contract on October 31, 2003[51]; when he signed the Contingency Fee Contract First Amendment on August 5, 2011[52]; or when he signed the Fee/Cost Reduction Agreement on May 24, 2012.[53] Under those agreements, Defendant promised to direct OST to pay to Plaintiff 25% of Defendant's share of future rents from the allotment.[54] For the above reasons, Defendant's current mental state is irrelevant to the resolution of the issue now before the Court.[55]

## IV. CONCLUSION

For the reasons stated above, the Court should hold OST in contempt unless it makes payment to Plaintiff, pursuant to the direction from the Clerk of Court, under Rule 70(a), Federal Rules of Civil Procedure, within thirty days of the Court's order.

---

[51]   Ex. 1.

[52]   Ex. 4.

[53]   Ex. 5.

[54]   On February 26, 2018, Defendant signed the 2018 Settlement Agreement with Plaintiff, affirming his obligations under the Contingency Fee Contract, as amended. Ex. 14.

[55]   It is noteworthy that after the underlying litigation had settled, one of the other Oenga heirs was determined for a time by the BIA to be *non compos mentis*, but the BIA nonetheless adopted a distribution plan for that person, under 25 CFR § 115.102, that paid Plaintiff's attorney's fees from annual rental payments received into that person's IIM account. The BIA could avoid the instant litigation by reaching the same conclusion now regarding Defendant.

WINNER & ASSOCIATES, P.C.
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522
Law Offices of

Dated at Anchorage, Alaska, this 18th day of February, 2020.

WINNER & ASSOCIATES, P.C.
Attorneys for the Plaintiff Raymond C. Givens

By:    s/ Russell L. Winner
       900 West Fifth Avenue, Suite 700
       Anchorage, Alaska 99501
       Phone: (907) 277-9522
       Fax: (907) 277-4510
       E-mail: rwinner@winnerlaw.com
       ABA No. 7811149

Law Offices of

**WINNER & ASSOCIATES, P.C.**
900 WEST FIFTH AVENUE, SUITE 700
ANCHORAGE, ALASKA 99501-2029
(907) 277-9522

PLAINTIFF'S SUPPLEMENTAL RESPONSE
TO UNITED STATES' NOTICE OF STATEMENT
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH