RUSSELL L. WINNER, ABA 7811149
WINNER & ASSOCIATES, P.C.
900 W. 5th Avenue, Suite 700
Anchorage, AK 99501
Telephone: (907) 277-9522
Facsimile: (907) 277-4510
Email: rwinner@winnerlaw.com

Attorneys for Plaintiff Raymond Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RAYMOND C. GIVENS,<br><br>    Plaintiff,<br><br>v.<br><br>WALLACE OENGA,<br><br>    Defendant. | **DECLARATION OF**<br>**RAYMOND C. GIVENS**<br><br>Case No. 3:19-cv-00043-HRH |

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1. I am the Plaintiff in this action. I make this declaration in support of Plaintiff's Supplemental Response to United States' Notice of Statement, filed herewith.

2. Attached hereto as Exhibit 17 is a true and correct copy of a letter, dated December 9, 2011, that I received from Eugene R. Virden, Regional Director, BIA Alaska Region. I have redacted the names of the Oenga heir and that person's guardian, which are referenced in the letter, because that person was then a minor, and because that person is not a party to this action.

DECLARATION OF RAYMOND C. GIVENS
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH     Page 1 of 2

Case 3:19-cv-00043-HRH    Document 66    Filed 02/18/20    Page 1 of 9

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 18th day of February, 2020, at Tucson, Arizona.

s/ Raymond C. Givens

DECLARATION OF RAYMOND C. GIVENS
*Raymond C. Givens v. Wallace Oenga,*
U.S. District Court for the District of Alaska, Case No. 3:19-cv-00043-HRH

Page 2 of 2

Case 3:19-cv-00043-HRH   Document 66   Filed 02/18/20   Page 2 of 9



## UNITED STATES
## DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
Alaska Regional Office
3601 'C' Street, Suite 1100
Anchorage, Alaska 99503-5947

IN REPLY REFER TO:

Raymond C. Givens, Esq.
Mail and Email
Givens Law Firm
1309 114th Ave. S.E.
Suite 211
Bellevue, Washington 98004

DEC 09 2011

Dear Mr. Givens:

Re: Preparation and approval of Distribution Plan for Individual Indian Money Account of ▮▮▮▮▮ a minor, to pay attorney fees and costs billed by the Givens Law Firm

    This letter is to follow-up on a series of conversations and email exchanges you have had with Alaska Regional Solicitor's Office attorney Roger Hudson. Although the initial focus of your discussions was on language proposed to be included in the Distribution Plan which would include a statement relating to and commenting favorably on actions taken by the minor's court appointed guardian, ▮▮▮▮▮ additional concerns are also raised by the circumstances, and by the Bureau of Indian Affairs' (BIA) need to fulfill the regulatory requirements of 25 C.F.R. §§ 115.400 *et seq.*

    In particular, consideration of the one page document captioned "Itemization of Lump Sum Settlement with Fees and Costs Due," recently furnished to Mr. Hudson, has raised questions which the BIA believes must be addressed prior to finalization and approval of a Distribution Plan. In order to properly evaluate the Itemization Sheet, the BIA has had to focus its attention on the terms of the attorney client agreement, as amended, upon which the Itemization categories and amounts are presumably based. The two documents we have looked at are the October 31, 2003 Contingency Fee Contract and the August 5, 2011 First Amendment thereto. We understand these contractual documents were first provided to Department of Justice and Regional Solicitor's Office counsel in August, 2011.

    The BIA has also been informed that the completion of the Distribution Plan, and its content, is being presented by you as a more or less integral part of the completion of a comprehensive Settlement Agreement that your clients, including ▮▮▮▮▮ along with five other members of the Oenga family are in the course of negotiating with the United States and the several oil companies referred to collectively as the Unit. The BIA understands that the counsel involved in the negotiations for all of the parties believe the terms of the Settlement Agreement to be in their clients' best interest, and would like to conclude negotiations that have been ongoing. The BIA has no desire to interfere with completion of the

1

Exhibit 17
Case 3:19-cv-00043-HRH   Document 66   Filed 02/18/20   Page 1 of 7

Settlement Agreement, and hopes that the matters addressed in greater detail below can be dealt with expeditiously but independently of the parties reaching a consensus on the Settlement Agreement terms. However, the BIA cannot provide instant turn-around to finalize and approve the Distribution Plan.

To the degree that Mr. Hudson may have had the belief that the BIA can engage in some sort of shortcut of the regulatory process for Distribution Plan approval, we apologize if he has raised unrealistic expectations. In order to carry out its fiduciary duties and comply with the applicable regulations, the BIA will have to proceed in accordance with established procedures, and meet established requirements. We hope to do so as promptly as possible, but do not see why following those necessary steps should delay completion of the Settlement Agreement. After all, it fundamentally affects the interests of all seven allotment owners, and most of them are not directly concerned with issues relating to the ▮▮▮▮ IIM Account Distribution Plan.

You were previously furnished with a copy of the standard BIA "fill-in the boxes" form which is the actual Distribution Plan. That form provides no space for any extended discussion or analysis, but simply signature lines for recommending and authorizing officials, who by their approval acknowledge that recommended payments/withdrawals under the Distribution Plan are in the minor account owner's best interest. Attached to this letter is a copy of a document titled: "BIA IIM Social Services Assessment and Evaluation of Need Case Management Quality Assurance Tool Minor Accounts (Assessment and Evaluation of Need Document)," which the Human Services Director or Social Worker has to complete prior to development of, and eventual approval of, a Distribution Plan. This document is the tool used by the social services worker to collect information and make recommendations regarding both the minor's and the guardian's requests. Assuming that we do not encounter any unforeseen problems in carrying out the steps described below, we expect that the BIA would eventually be able to include language in its Assessment and Evaluation of Need document similar to language Mr. Hudson drafted and circulated on November 21, 2011. We understand that language to have been satisfactory to you.

You may recall that an effort was made some weeks ago to arrange a meeting between the guardian and the BIA Alaska Region Human Services Director Gloria Gorman. Unfortunately, conflicting schedules did not allow such a meeting to take place. The meeting, or at least an extended telephonic interview, will have to be completed before the Assessment and Evaluation of Need document, and thereafter the Distribution Plan can be completed and finalized. The BIA is informed through your report to Mr. Hudson that the guardian is seeking to provide in the plan only for payment of attorney fees and costs, an obligation he incurred on his ward ▮▮▮▮ behalf, and that he is not seeking to include in the Distribution Plan authorization of any other payments to defray personal expenses of the minor account holder. Nonetheless, BIA needs to follow the normal process of gathering information, and consulting with the guardian, as required by 25 C.F.R. §§ 115.417 and .420; and 25 CFR Part 20. The BIA investigated the availability of Ms. Gorman for the remainder of this year, as well as exploring the possibility of a colleague standing in for her and conducting the interview. Due to scheduling conflicts, it appears that it won't be possible to set up the interview until after the first of the year. In the meantime, much progress can be made by the guardian's submission of information requested in this letter.

2

Information that will be required

Pursuant to regulatory requirements at 25 CFR Part 20, the BIA social worker is under an obligation to complete the Assessment and Evaluation of Need document. In reviewing the copy of the document attached to this letter, you will see that the social worker must obtain certain information. The BIA is in possession of a copy of the state court guardianship papers. Information about resources available to meet the minor's needs will also have to be submitted. Although, we have been informed second hand that the guardian has assumed responsibility for all of the minor's living expenses, we need to confirm and document all the essential facts about the minor's circumstances. After all, even if a creditor can point to legitimate obligations, and a guardian advocates a particular disbursement, the BIA will not authorize IIM accounts disbursements which would jeopardize the account holder's ability to meet living expenses. Just as you on the guardian's behalf are trying to avoid or minimize risk that his actions will be legally attacked, the BIA in the interest of the minor, and to comply with law, must also make sure that its actions as trustee are prudent, adequately documented, and in strict accordance with legal requirements.

Admittedly, this is an unusual situation. We are not aware of any past instances where the BIA has been called upon to authorize a very substantial disbursement, or series of future disbursements, on the basis of a contingency fee agreement such as exists in the present case. Because of this, we are necessarily leaning on advice of legal counsel for guidance. Accordingly, based on our initial review of the Itemization Sheet, and the 2003 and 2011 attorney fee agreements, we would request that you provide a response to the following questions and issues.

    A.    An invoice or receipt documenting legal services and costs incurred.

Since ▓▓▓▓ is requesting that the disbursement be made directly to the Givens Law Firm in return for the professional services that it has provided to ▓▓▓▓ and expenses it has incurred on her behalf, the package will need to contain sufficient information and documentation to support making a direct payment. *See* 25 C.F.R. § 420(f). BIA will need to receive an "invoice or bill of sale." *See id.* BIA has reviewed the materials that the Givens Law Firm previously provided during the course of these settlement negotiations, and BIA determined that they do not constitute the type of "invoice or bill of sale" contemplated by the regulations. Would the Givens Law Firm please provide such an invoice to ▓▓▓▓ for his review, which ▓▓▓▓ could then include in his package to BIA requesting the disbursement? In order to help provide guidance on this issue, BIA is available to discuss some of the information which has not yet been provided and is necessary for BIA's review.

The current Contingency Fee Agreement provided to BIA appears to set a contingency fee amount of 35% of any lump sum amount paid in any settlement agreement and requires an additional 25% of annual rental payments received for the lease of the allotment between 2012-2038. BIA has some questions regarding this Contingency Fee Agreement (discussed *infra* in Part B), and one of those questions is particularly relevant here. Specifically, under the American Bar Association's ("ABA") Model Rules of Professional Conduct, Rule 1.5(c), a contingency fee agreement is supposed to state explicitly in writing the "litigation and other expenses to be deducted from the recovery" and "whether such expenses are to be deducted before or after the contingent fee is calculated." The current Contingency Fee Agreement does

3

not state whether the expenses are to be deducted before or after the contingent fee is calculated, and the initial calculations provided to BIA indicate that the Givens Law Firm intends to assess the contingent fee before the expenses are deducted, increasing the legal bill for ▮ by approximately 3% of her total recovery. We hope any invoice could address this issue.

The more difficult amount to calculate is the amount owed for "▮ 1% Share of Fees and Costs." BIA has reviewed the "▮ Itemization of Lump Sum Settlement with Fees and Costs Due" submitted to the Regional Solicitor's Office on November 21, 2011 (hereinafter "Itemization Estimate"). BIA has also reviewed the April 27, 2011 letter that set forth the amount of fees and costs that the Oengas asserted the United States owed up to that point under the Equal Access to Justice Act ("EAJA") (hereinafter "EAJA Cost Estimate"). BIA is not certain that either document contains sufficient information to establish that the $6,400.61 attributed to fees and costs is attributable to ▮ 1% share of fees and costs. Without a more detailed itemization it will be difficult for the BIA to make a determination based on the information currently available.

Specifically with regard to the items listed as "deferred fees & costs 2002-2009," and "Deferred fees" for 2010 and 2011, please explain how these payments are called for by the current Contingency Fee Agreement. Why aren't these amounts subsumed by the percentage fee applied to the lump sum settlement? The Office of the Special Trustee for American Indians indicates that disbursements were made to the Givens Law Firm in past years from the adult Oengas' IIM accounts, but we would appreciate an explanation of the contract interpretation that supports such disbursements.

Second, although the EAJA Cost Estimate provides more detail regarding these fees and costs, BIA cannot authorize the disbursement based on those estimates. The relevant Expert Witnesses ($339,021.38) and Court Reporters ($16,507.68) presumably provided the Givens Law Firm with invoices or receipts for their services, and it would be appropriate for the Givens Law Firm to attach copies of those receipts to its own invoice for costs. Similarly, the amounts provided for "Filing Fees" ($705.00), "Deposition/Court Reporters" Deposition Witness Fees" ($185.00), "Transcripts Hearing and Trial" ($19,015.80), "Postage" ($2,628.68), "Telephone: Long distance/Conference calls" ($256.87), "Photocopies/Document Production ($7,493.51), and "Travel" ($22,955.47) appear to be based upon expenses incurred as part of the Givens Law Firm's representation, but without more specific documentation being attached, BIA cannot ascertain whether all of these expenses can be attributed to the Givens Law Firm's representation of ▮ as related to the Lease. Moreover, it is unclear what the notation "Mileage program 185,000 miles = $1,850 value" means. If the Givens Law Firm used 185,000 miles from some airline mileage program to cover travel for its clients as part of its representation related to the Lease, then the Firm should document that usage and establish that it is appropriate to seek reimbursement for those miles from these clients..

Finally, there appears to be at least $35,693.61 of additional, total expenses being requested in the Itemization Estimate that are nowhere accounted for in the EAJA Cost Estimate, and ▮ portion is understood to be 1% of these expenses. The EAJA Cost Estimate summarized $408,769.39 of total expenses through April 27, 2011. The Itemization Estimate includes "Unpaid costs (1% share)" in the amount of $4,444.63, which indicates total costs of $444,463.00. Assuming this difference results from additional expenses incurred by the Givens

4

Case 3:19-cv-00043-HRH   Document 66   Filed 02/18/20   Page 6 of 9
Exhibit 17
Page 4 of 7

Law Firm since April 27, 2011, the BIA would request that the invoice or receipt contain some explanation of these expenses.

Thus, BIA would request that the Givens Law Firm please prepare an invoice or receipt for the requested amount with the necessary documentation and receipts to support the claimed expenses. If the Givens Law Firm could provide those documents to ▓▓▓ for ▓▓ review, so ▓▓▓▓ could then include them in the package with ▓▓ letter requesting the disbursement, it would be appreciated. BIA would also request that ▓▓▓▓ certify that ▓▓ has reviewed the invoice and receipt information.

B. Establishing that the plan is in the best interest of ▓▓▓

BIA must determine whether the disbursement plan is in the best interest of ▓▓▓ and whether the disbursements will be used for ▓▓ direct benefit. 25 CFR §§ 115.417; 115.421(e). The request for payment of fees letter should provide an explanation for why these disbursements are in ▓▓▓▓ best interest.

The request for payment of fees letter may argue, among other things, that ▓▓▓▓ as guardian, acted in ▓▓ best interest by hiring the Givens Law Firm to represent ▓▓▓ in attempting to secure increased past and future rents regarding the allotment, in which ▓▓ holds a 1% interest. Any increase in past and future rents on that allotment would result in financial payments to ▓▓▓ and thus would be in ▓▓ financial interest. Here, if ▓▓▓ receives the funds that are currently being proposed, the resulting income will increase ▓▓▓ IIM Account by over $135,000 and will increase the rents that ▓▓ receives in the future to over $6,500/year. That information suggests that securing legal representation in order to pursue claims and causes of action related to the Lease may have been in ▓▓▓ best interest, and suggests that ▓▓▓▓ may have been acting in ▓▓ best interest by arranging for ▓▓ representation.

BIA would request that the request for payment letter also include any further explanation that ▓▓▓▓ may have for how his hiring of the Givens Law Firm served ▓▓▓ best interest. Similarly, BIA would also request that the letter address how ▓▓▓ payment of any debts incurred under the current Contingency Fee Agreement serves ▓▓ best interest.

BIA would raise one specific concern. The current Contingency Fee Agreement is quite generous to the Givens Law Firm, and payment of the current Contingency Fee Agreement does diminish the benefits received by ▓▓▓▓. For example, after paying the currently proposed fees, ▓▓▓▓ lump sum payment drops from $135,000 to $78,193.93, decreasing the total by over 40%. In addition, the provision regarding future rents would decrease any amount ▓▓▓ received as rent under the Lease by 25% until ▓▓ in her 40's. Neither ▓▓▓ nor the Oengas have ever sought BIA's advice on this current Contingency Fee Agreement, and BIA is not aware of any regulation or law requiring that they do so. Nonetheless, BIA regulations state that the evaluation of a Disbursement Plan must consider all information necessary to ensure that the disbursement is in the best interest of the minor. See 25 C.F.R. § 115.420. In order to meet its regulatory obligation BIA must be satisfied that the fee is reasonable.[1]

---

[1] ABA Model Rules of Professional Conduct, Rule 1.5(a) provides several factors for determining the reasonableness of an attorney's fees.

5

Here, the current Contingency Fee Agreement raises certain concerns that BIA is not in the best position to assess because BIA has not previously addressed a similar fee arrangement in the context of a distribution plan for a minor. For that reason, BIA would request that the Givens Law Firm please provide its explanation and support for the reasonableness of the current Contingency Fee Agreement. For example, many Bar Associations issue Ethics Opinions that provide guidance on reasonable fee arrangements, and the Givens Law Firm may identify some Opinions that are on point. Similarly, if no Opinions are on point, the Firm could request a written legal ethics opinion. Here, the Givens Law Firm represented ▮▮▮▮ before the Interior Board of Indian Appeals ("IBIA") located in Virginia and before the United States Court of Federal Claims ("CFC") located in the District of Columbia. Those Bars would appear to be appropriate fora from which to seek such an opinion, but BIA is willing to discuss referring to the opinions of other potential Bar Associations as well. Similarly, if ▮▮▮▮ or the Givens Law Firm has a preferred alternative method for resolution of these concerns, BIA would discuss those options as well.

The issues that BIA would like to have addressed by the submission are:

1) The current Contingency Fee Agreement does not appear to comply with Model Rule of Professional Conduct 1.5(c) because it does not clearly state "whether [litigation and other expenses] are to be deducted before or after the contingent fee is calculated." Given this issue, should the parties adopt an interpretation of the current Contingency Fee Agreement that assesses the contingent fees after the expenses have been deducted, which would favor the clients?

2) The current Contingency Fee Contract was amended on August 5, 2011, after the parties discussed and identified terms upon which a potential settlement might be reached. The Amendment changed the contingency fee calculation methods, and the contingency fees under the Amendment are allegedly "slightly less" than under the original method. BIA agrees with the Amendment's statement that the original mechanism was "cumbersome" and "somewhat complex," and perhaps as a result, BIA's initial calculations for the potential fee amounts have not established that the new contingency fees are actually less than those provided for under the old calculation mechanism. Given this concern, the submission would need to address the following two issues:
   a) The submission should prove that the Amendment actually decreases the contingency fee as opposed to increasing it. The submission might do so by calculating the fees under the two different methods for a few representative years.
   b) The propriety of modifying the current Contingency Fee Contract during the course of the settlement negotiations, and whether the modification required compliance with Rule 1.8.

3) Finally, BIA is uncertain whether or not the current Contingency Fee Agreement meets the standard for "reasonableness" under Rule 1.5(a). BIA is particularly concerned about the 25% of fees collected on future rents until 2038 because it does not appear that the attorney will have to expend any time or labor to continue receiving that significant compensation. *See* Rule 1.5(a)(1). Similarly, if one converts the fee amounts to an hourly rate (based on the hourly estimates provided by the Givens Law Firm in its EAJA letter, *i.e.* 4,909.25 hours through March, 2011), then the fees may be perceived by some as excessive when compared to rates typically charged in the relevant locality. *See* Rule

6

1.5(a)(3). On the other hand, BIA recognizes that many of the other factors that are relevant under Rule 1.5(a) may weigh in the other direction. For these reasons, BIA would request that the submission address whether the current Contingency Fee Agreement is "reasonable" under Rule 1.5(a) generally, and specifically whether the current Contingency Fee Agreement is "reasonable" as it relates to the "future rents" provision.

BIA recognizes that these are difficult issues, and as mentioned above, BIA believes that these concerns would be best resolved by reference to the opinions of one of the Bar Associations' ethics offices that deal with these types of issues regularly. In contrast, responsible BIA personnel have never had to assess a disbursement from a minor's account to pay obligations incurred under this type of contingency fee agreement. We also think such a course of action will best protect all parties involved in the approval of the Distribution Plan, because it will rely on the appropriate authority, a Bar Association's ethics office, in making the determination as to the "reasonableness" of the attorney's fees claimed. Of course, as mentioned above, if ▉ or the Givens Law Firm has a preferred alternative method for resolution of these concerns, BIA would discuss those options as well.

\* \* \* \* \*

In sum, the BIA has no desire to interfere with completion of the Settlement Agreement, and hopes that the matters addressed herein can be dealt with expeditiously but independently of the parties reaching a consensus on the Settlement Agreement terms. As this letter described, the concerns raised by the circumstances and by BIA's fulfillment of the regulatory requirements of 25 C.F.R. §§ 115.400 *et seq.* must be addressed, and we hope to do so as promptly as possible. The BIA looks forward to the meeting or telephonic interview required for the Assessment and Evaluation of Need Document, and thereafter the Distribution Plan. In the meantime, much progress can be made by the guardian's submission of information requested in this letter. We look forward to receipt of such information to continue and complete this process in the best interest of the minor represented.

Sincerely,

*[signature]*

Eugene R. Virden
Regional Director
BIA Alaska Region

CC: Robert Stockton, United States Department of Justice. (electronically)
Jason Hill, United States Department of Justice (electronically)